The next case on the call of the docket is Agenda No. 2, No. 124940, People of the State of Illinois v. DeMario D. Reed, the appellant. Mr. Alexander Gerard Munchies is the appellant and when our helper finishes, you can proceed. We have a understanding of actual innocence in the context of a trial. We're talking now about a plea. So my question really to you is about remedy. You ask in your brief that if we agree with you that we remand this case to the appellate for their consideration of the issue of the trial court's determination of credibility. The trial court rejected this affidavit of Mr. Calaway. So we send it back to the appellate court and let's say the appellate court decides that they're not going to credit the determination by the trial court on credibility. What happens then? Is his plea vacated? Is he exonerated? Is he freed? Maybe is a better word. Is it set for trial? What happens to the counts and cases that were dismissed by the State as part of this plea agreement? For example, you say in your brief one of the counts that was dismissed involved unlawful possession of a weapon by a felon. The affidavit doesn't address anything about the shotgun. So how do we sort out what happens next under your theory? Sure. So the starting point is Washington. So the State could, again, bring these charges, assuming they have probable cause to believe that defense was committed or defenses. And then one charge that I think that would certainly be brought would be this armed violence charge. That's not going to go anywhere. But I think that as a function of time, there might be questions about non-profit charges. And so if this Court wanted to do that sort of analysis, it would look to its own 2017 decision and its title. But I think that at the very least, the armed violence charge would be squarely before any trial court. But not the other counts or the other cases? I think that sort of as Justice Friedman noted in the decision of Washington, this is a question about time-relativeness. So time is, in fact, passing. And so there may be hindrances to non-profit charges. But I do not believe there would be any hindrance to the State, as long as they have probable cause to believe armed violence was committed, that the State could bring that charge. And the benefit of the bargaining ideas, how do we deal with that? Excuse me? Well, there's a plea agreement here. You know, there was a plea to one of the charges for the minimum sentence. And on the other side, there's the dismissal of all of these charges. We look usually at that kind of thing as enforcing the benefit of the bargain. What the State agreed to dismiss all these cases, and yet now the case will have to go back for trial under your theory. How does that work? Right. So the State, neither the State nor the court, and certainly not defendants, no one has an interest in punishing an innocent person. And so the benefit of the bargaining idea, I think it reaches its outer limit when we're talking about innocence. And that was Washington's key insight. If, in this case, the trial court, after the Stage 3 evidentiary hearing, had granted the relief, what would happen then? Just go back for trial on this issue alone? I think, yes, it would go back for trial on armed violence. The defendant... But not on the other charges that were dropped. I think that in this particular case, we haven't done that analysis, but I think that People v. Stile in the 2017 case, talking about the effect of malprocess over time, would perhaps control. So the reason you don't want to file a motion to withdraw the guilty plea is because it would set aside the entire benefit of the bargain and bring all of the other charges back. Is that correct? Right. What I'd like to stress is that litigating these claims under Washington is not a very attractive option. The cap on any future sentence is not what the parties agreed to. This Court has frequently told trial courts that when you're sentencing an individual, you need to get to know something of their life. And is perhaps the case that someone who has demonstrated sufficiently that they should have a new trial would not receive perhaps the lower end of whatever the negotiated plea bargain was. These claims come built in with inherent risks, and this is especially true of petitioners who pleaded guilty for a lesser sentence. In any event, I believe that the Washington standard is extraordinarily difficult to meet. Whether in the plea context or the trial context, what the circuit court does is they look at these new allegations and they measure it against what they know from the record. Whether these allegations are of such a conclusive character that they should get a new trial is something the court assesses not only once but twice, first as a matter of law in the initial stages, and then when the actual witnesses are called before the court, the court probes issues of reliability, credibility, and trustworthiness. Counsel, isn't it easier, though, for a defendant who pled guilty, easier under Washington to meet that standard than someone who went to trial and the record is fully developed as to all the facts against that person? I think not, Your Honor. The state will have agreed with the defendant about a factual basis under 402, and all of those elements will tend to defeat innocence claims. Well, I mean, we're talking about the realities of pleading guilty based on the evidence. The realities in life are a factual basis is a skeleton of the evidence. It's bare bones. Well, so it's not just the factual basis. The court looks to the entire record, and this court conducted a similar analysis in 1997 in its case to Larrick v. Dunlap. It was trying to decide whether or not a petitioner who had previously pleaded guilty to an offense would be subject to the adoption of collateral estoppel in a subsequent civil proceeding. That was a very detailed and meaningful analysis, and I don't think it's the case that, you know, the court is running on a skeleton crew. Moreover, at the third stage of proceedings, the state is allowed to call witnesses. And at the second stage, if they want to file an answer, they can do that. That's the purpose of a third stage proceeding, is to let the courts reach a just result by probing issues of reliability, trustworthiness, and credibility. Again, Mr. Reid is not asking for extraordinary relief here. He's asking for this court to follow Washington, and he's asking to get into the courthouse doors, get through there. The Fourth District said no, but under Washington, all petitioners should have a chance to demonstrate their actual innocence. Should there be any higher standard because of defendant plead guilty? No, Your Honor. I think that year by year, brick by brick, this court has built an incredible structure for analyzing factual innocence cases, starting with Washington, leading to Edwards this year and Robinson, Sanders in 2016, Coleman and Ortiz. This court has built up an incredible body of case law that should guide courts when analyzing these claims. Now, Mr. Reid pleaded guilty and later pursued his claim of actual innocence in this way. Unfortunately, both lower courts concluded, made decisions that are just riddled with legal errors. The circuit court concluded that Davey Calaway's testimony was not actual new evidence, although that testimony exculpated Mr. Reid and was not previously available. The appellate court concluded that not all innocent people have substantive due process protections. This is a third stage proceeding, so Mr. Reid had to, by preponderance of the evidence, demonstrate a substantial showing of a violation under Washington. Yet the circuit court decided to leave the file standard, and the appellate court described the standard as clear and convincing. For the reasons we discussed today and in the briefs, both courts erred. As a remedy, Your Honors, Mr. Reid asked that this court either vacate the appellate court decision and remand to that court to analyze a third stage hearing, or alternatively to remand to the circuit court for a new third stage hearing. Mr. Reid trusts that this court will reach a just result on either option, and Mr. Reid just wants to close by saying nothing has changed since this court has decided Washington, and this court should affirm that its commitment to Washington is unwavering. Would a decision in favor of your client have any effect on Alford pleas and the constitutionality? I do not think so, Your Honor. I believe it's a 1980 decision from this court that sort of cleanly analyzed the fact that whether it's an Alford plea, so the defendant insists that they are innocent, or just a more typical run-of-the-mill plea that we talk about every day, that, you know, they remain constitutional under the Illinois Constitution. And, you know, I think that if in the case of an Alford plea, the real effect is sort of the inferences that the court gets to make during the proceedings and the arguments that the state gets to make either at the third stage or at the trial. But in any event, Alford pleas do not need to be reconsidered in Illinois. This is simply a matter of substantive due process under the state constitution. Could or should we adopt a standard that would require a person claiming actual innocence after a plea to seek to withdraw the plea of guilty? I'm sorry. Should we? As part of the remedy or to qualify for getting the conviction set aside. So I think that adopting that would collapse procedural due process and substantive due process. And so that's why we spend time in the opening brief, and the amicus does this as well in its brief, explaining how people can enter valid guilty pleas but still nonetheless be innocent. And I think the idea of requiring a petitioner to couple a claim of, say, ineffective assistance at plea counsel or invalidity of the plea collapses and confuses these two distinct concepts of procedural due process on one hand and substantive due process on the other. But as has already been pointed out in earlier questioning, the record is not as fully developed as far as facts and evidence in a plea. And you have the defendant saying that he or she was guilty. Does that factor in in any way? So yes, in the sense that a defendant could never satisfy the Washington standard simply by claiming that they're now innocent. Washington requires that there be newly discovered evidence. And that newly discovered evidence is what triggers substantive due process protections. So it's certainly not the case that anybody can just change their mind. And for the reasons we discussed earlier, it's certainly the case that if somebody bargained for a negotiated guilty plea, the idea of facing an actual trial on that charge and possibly a more onerous sentence is a very unattractive one. This was a third stage hearing, wasn't it? Yes, Your Honor. Is that correct? Yes. The State filed a motion to dismiss, and then it proceeded to a third stage proceeding. Mr. Reeve called his witness, and the State did cross-examination, and then it went under consideration by the court. So he wasn't precluded from having a hearing? At the circuit court level, yes. At the circuit court level. Yes, and then it went up on appeal, and the Fourth District decided that this claim was not cognizable in its words. And that particular idea is actually at odds with this Court's actions in McDowell v. Boyd, the 2010 decision out of Third District, People v. Knight, this Court's own decision in 2016 in Sanders, which approved of Knight, and also People v. Shaw, who sent the First District decision. And I just want to underscore one more time that this concept that you cannot analyze innocence when there is previously a plea is demonstrably false, starting with this Court's decision in 1997, Telerik v. Dunlap, doing exactly that type of analysis up through the decisions I just mentioned. If there are no other questions, thank you. Thank you, Mr. Munch, please. Thank you. Ms. O'Connell, thank you. May it please the Court, Counsel, I'm Assistant Attorney General Erin O'Connell on behalf of the people of the State of Illinois. I'd like to step back a bit and talk a little bit about the policies behind guilty pleas and the plea negotiation process. I think it's been crystallized in my opponent's argument that the remedy that he's asking for would threaten to seriously undermine the incentives that are in place that sort of motivate the State to enter into plea negotiations. Generally, a guilty plea is attractive to the State because it comes with a high degree of certainty and finality. Doctrinally, the defendant waives almost all of his constitutional rights and then his later ability to claim error in the proceedings below. He's obviously giving up his right to hold the State to its burden of proof. He's giving up his ability to cross-examine the State's witnesses and call witnesses in his defense. And that sort of efficiency also motivates the State to offer incentives here. In exchange for sacrificing all these rights, a defendant typically receives a benefit in return. In this case, for example, the State dropped all but one charge, and then it offered the minimum sentence on the armed violence charge to which he pleaded guilty. As a result of this process, both sides benefit. And the remedy that defendant seems to be seeking now would really allow him to obtain all the benefits of the guilty plea process while holding the State essentially to its part of the bargain, but yet to come forward later with his new evidence of innocence. And then apparently the requested remedy here is to not permit the State even to go back to the status quo ante. He's not asking even at this point to just withdraw his plea and proceed to a trial. He appears to claim that the State will be bound by its decision to dismiss the remaining charges here and will only be permitted to proceed on the armed violence charge to which he pleaded guilty. The State will be, in addition, in an even worse position than it was in the beginning because its evidence at this point has grown stale. The memory of the officer who did the arrest and found the contraband that underlay the charges, that has the memory of those events has receded by this point. And the defendant will, unfortunately, he won't get the purpose of Washington is not complete exoneration, is not to allow him to avoid prosecution. Washington has intended to do the process over again, to allow him to invalidate the convictions that have been entered and then to go back to a trial. He's seeking a sort of drastic extension of Washington here by asking not only that his convictions be vacated, but that the State be held to, you know, its side of the plea agreement. Ms. O'Connell, is there anything in the Post-Conviction Hearing Act that limits it to only constitutional violations that occur following the trial? No, Your Honor. And certainly, a Petitioner who pleads guilty may file a post-conviction petition under the Act. It is constitutional violations that occur in the proceedings that led to the conviction or the sentence. So traditionally, a guilty plea Petitioner may claim that his guilty plea was invalid because it was involuntary or coerced or it was the result of ineffective assistance of plea counsel. So certainly, those remedies have always been available to Petitioners who plead guilty. And just to note below, there was a claim that – both types of claims, actually – that his guilty plea was involuntary and that plea counsel was ineffective. Those were then paired with the claim of innocence. So the reason he actually proceeded to the third stage hearing in the Circuit Court was because he did have this grouping of claims. So if you do challenge the validity of your plea, then the State has conceded. At that point, you can also pursue a claim of innocence. That was how he got to the third stage. And it was only on appeal when he had completely abandoned all of the other claims and only proceeded on innocence. It was at that point that the Fourth District said, because you haven't also challenged your plea, your claim of innocence is not cognizable. So there certainly are situations where a claim of innocence can be raised, as long as it's paired with this sort of a challenge to the guilty plea itself. And then that is something that he did in the Circuit Court below. But 116.3 allows for a defendant after a plea of guilty to raise – to ask for the testing. So what if the testing came back exonerating the defendant? He would have no – based on your theory, he would have no vehicle through the Post-Conviction Hearing Act, correct? That is true. So the Post-Conviction Testing Act itself doesn't provide a remedy. And I think this Court has recognized that the Post-Conviction Hearing Act and the Post-Conviction Testing are sort of separate procedures. So there are actually individuals who cannot file a post-conviction petition, but can nevertheless seek post-conviction testing. So defendants who have served their sentences can't file a post-conviction petition. They have been permitted, nevertheless, to file 116-3, motions for post-conviction testing. And the amicus brief, I think, sets out how this can work even without a post-conviction remedy. There are those individuals who have pleaded guilty who obtain exonerating DNA testing. They may then seek a remedy from either the State's attorney or the clemency process also exists to, you know, exonerate on the basis of this evidence. But historically, there are examples in the amicus brief, the Dix-Mor-Fibes in particular, where individuals who cannot file a post-conviction but have the evidence of innocence, they have received a remedy from the State's attorney who then agrees, based on that evidence, to go back and vacate the convictions. So it does illustrate that these are sort of parallel procedures, and 116-3 is more expansive in some ways than the Post-Conviction Hearing Act. There is to the extent there is a question about that issue, about whether those who obtain exonerating evidence under 116-3 should be allowed to file a post-conviction petition, it's not really presented on these facts here. And certainly, that's an issue that the Court could leave for another day as to whether those who have obtained that evidence should be permitted to proceed under the act to file the petition. The 116-3 remedy is broadly available, but it's also extremely narrow in that it requires that there is there to be a identity had to be the issue, and the types of evidence that can be sought are very limited. So primarily, the forensic DNA evidence or ballistics testing or fingerprint testing. So the statute is intended to create a very reliable form of evidence of innocence. And this Court could, if it were to leave this option open, potentially allow those who have actual reliable evidence of innocence, similar to the Federal Innocence Standard, to allow those individuals to potentially seek a post-conviction remedy. This case falls in the much broader category of unreliable evidence of innocence. Here, the issue is whether the co-defendant should have been allowed to say, the cocaine that you found in the bedroom next to this defendant's gun, which is admittedly his gun, that was actually my cocaine and not his cocaine. The circuit court recognized that this is a very unreliable type of evidence. Generally, it's certainly suspect. Under the circumstances here, it was highly suspect because it was the result of their being in prison together. The defendants had spoken, and that was the reason that the affidavit was generated. These are questions that the Court, and I wanted to just briefly discuss the reasoning behind rejecting the claim at the third stage hearing. This Court has traditionally said that those types of reliability and credibility issues are for the third stage. Here, that did allow him to call his co-defendant to provide live testimony. The circuit court then properly made a credibility determination based on its observation of his demeanor, and then also these factors that severely undercut the reliability, the length of time, the lack of any, you know, restriction. He had already pleaded guilty. He faced no real consequences. The prison setting in which this was developed, the Court then relied on those to reject as incredible, the testimony at the third stage hearing. I would disagree that any of those were improper considerations at the third stage. This Court has said that they should be evaluated at the third stage hearing. So here we actually have a case where he did receive as much as he could under the Post-Conviction Hearing Act. He got the third stage hearing that he requested. He was allowed to call his witness and then just failed to put on a convincing case. And I did want to briefly discuss in terms of how this would work in practice. The Washington test and the way that it is stated doesn't automatically seem to encompass the possibility of a guilty plea petitioner. It speaks in terms of the trial evidence and a comparison of new evidence to what was presented at trial. It doesn't easily extend to the guilty plea context, which is one of the reasons that the Fourth District found that Washington could not be applied to guilty plea petitioners. If the Court were to build on Washington, however, and apply this to those who have noted in my opponent's argument that there is really a very spare record. And the reason for that is the defendant has induced that sort of a spare record through his willingness to plead guilty. So here it's a matter of maybe three or four sentences in the record that's the State's factual basis. And the Court should, if it does extend Washington, really put a more onerous standard on these petitioners to come forward with the right type of evidence and to account for the fact that he has induced the development of a first skeletal record of the State's case. And even the First District in Shaw, which reached a contrary conclusion that these guilty plea petitioners can't raise these claims, really emphasized the importance of doing this. If this Court were to extend Washington to guilty plea petitioners, it should modify the standard and impose a higher burden for those who are seeking this sort of remedy. If the Court ---- And what would that standard be? So the most important component, I would assert, is a requirement that the evidence be of a reliable type. So this comes back a little bit to the 116-3 point, which is if you actually have forensic evidence that can show beyond any doubt, for example, if it's a sexual assault, that you are not the person that committed the assault. That might be the type of evidence that could qualify under an appropriate standard. Shaw itself talked about increasing the sort of standard of proof to a clear and convincing standard. That's another option that other States have adopted. But certainly, Washington doesn't apply cleanly here. As the appellate court, I think, called it, you know, inserting a round peg into a square hole. It requires some modification. And if the Court were to modify it, the remedy, the defendant's proffered remedy or argument today should not be what he receives as a remedy if this Court were to extend Washington. It should be the case ---- it should be more akin to the withdrawal of a guilty plea, and it should permit both parties to return to the status quo empty. The State should at that point be allowed to reinstate all these charges that it dismissed pursuant to the plea negotiation and to proceed to trial on all of those charges. That would be consistent with Washington. It would allow for the, you know, the vacator of the convictions and to contemplate a new trial. But it also, I think, would fairly account for the types of issues that are arising in the guilty plea context where we no longer have the bargain and really neither side should get the benefit of that bargain. They should be returned to the equivalent of the withdrawal of the guilty plea and further proceedings at that point. Counsel, we've seen different standards from different, stricter standards from different States. Do you see, you know, Colorado, California, do you see one of those in your reading that best fits your reliability standard that you spoke of to Justice Cardinaler's question? So I don't know that those courts have necessarily relied on, I mean, discussed the reliability component itself. They addressed more the standard of proof. So that should come along with it. I believe that, so for example, here in Illinois, we have a preponderance standard for prevailing on any sort of a post-conviction claim. One option out there is to impose a more onerous, clear and convincing burden on a petitioner trying to obtain relief on an innocence claim. The reliability component comes more from the Federal standard, which this Court has not adopted wholesale into Illinois law, but it does account, it would permit those who have truly compelling evidence of innocence and who have pleaded guilty to nevertheless pursue a claim of innocence. But it would also align more with the potential legislative intent under the Post-Conviction DNA Testing Act to the extent we intend to allow guilty plea petitioners to claim innocence, it should only be those who have truly compelling evidence, that type of forensic scientific evidence. And that issue is not fully presented here because we don't have any sort of reliable evidence at all. So this case might not create an opportunity to really get into the nuances of what that standard would be, but he should be excluded on these facts from raising the claim of innocence because he doesn't meet that threshold reliability requirement that the Federal courts, I believe it was Schlupp, sort of articulated this, we really require there to be compelling forensic proof or, for example, a number of eyewitnesses who are not known before trial, something that is verifiable and truly compelling for him to get in the door. And this petitioner here did not from the outset have that type of evidence, and so he should not have been allowed to proceed to a third-stage hearing just based on the co-defendant's affidavit. But this Court, I think, could appropriately limit this type of a claim to those situations if it were to import sort of some of the Federal standard into its innocence standard, not for cases generally. We're not seeking in any way to modify the Washington standard generally as applied to those who have proceeded to trial, but only if this Court were to adopt an expansion of Washington to the plea context, that would be an appropriate way to sort of respect the reasons behind our guilty plea negotiations and to sort of protect the integrity of that process by saying you can only come back to court with your new evidence if it's truly compelling. And for all the reasons we've set forth in the brief, general principles of waiver should govern here, but to the extent we are discussing sort of how this would apply in practice if the Court were to, you know, adopt an exception for these types of claims, it should, in this context, impose a more onerous burden, and the reliability requirement should be part of that. So it seems I guess we would all agree that a truly innocent person shouldn't be incarcerated, and you're not arguing that. So are we looking now at a remedy, and is your remedy really akin to requiring a defendant to withdraw his guilty plea, therefore setting aside the benefit of the bargain? I think that would be the fairest result if the defendant were permitted to raise this type of claim. And I don't we certainly don't disagree with the premise that there are good reasons for Washington, and, you know, a Petitioner who has proof of innocence should not be incarcerated, and there's really no interest in that. The – there are, however, principles of waiver that underlie guilty pleas in general that would – should operate in this context to waive a claim of innocence in the post-conviction context. Essentially, if a defendant has waived his right to a trial and to hold the state to its burden of proof, he's essentially given up his right to then claim innocence based on additional evidence that developed after trial. But, yes, if the Court were to find an exception to the waiver principle here and were to extend Washington to this context, the fairest result in the case of a negotiated plea is basically the withdrawal of the plea and the reinstatement of the dismissed charges and the right of both sides to then proceed to trial on all charges for an evaluation of evidence. Solely because a defendant in this – in this context might have a meritorious Washington claim does not necessarily mean that – that he is innocent, and that is why Washington simply requires that there be a new trial for evaluation of both old and new evidence, and that should apply here as well. So we would ask that this Court affirm the appellate court's judgment. Thank you, Mr. Carroll. Mr. Monchies. So I think, Justice Carmeier, you sort of touched on what I think is, like, the core issue of this case, which is that the State does not have an interest in punishing innocent people. And under Washington, what we say is that newly discovered evidence of innocence now triggers substantive due process protections. That's really the key. And I understand, Justice Burke, I think earlier you were concerned about what about the dismissed charges. Well, I think under settled Illinois law, the State has at least two options. One is under Stitle, bargain for a tolling of a stack of these charges, you know, make that a term of the plea bargain. This Court in Stitle said we haven't – we don't analyze the constitutionality of that particular issue. They left it open, and this Court sided federal case law on that point. So that could be part of the plea bargain. The second option is the State knock on the door of the General Assembly. Ask them to make this sort of situation one that does not – that tolls the statute of limitations. I'd like to say also that, you know, the State has argued at length about how this is not a workable standard. But what you didn't hear the State say or acknowledge was decades of appellate doing exactly what the State says is impossible. Starting with Tolerico v. Dunlap to Floyd v. McDowell to People v. Knight, People v. Sanders, People v. Worrell, this is possible. So this is a bit of an illusion the State is conjuring for this Court. And then finally, I just want to say this does feel like a new context, but the core issue is innocence. And I think we can get kind of turned around because we have these ideas of contracts and bargains and that sort of thing. But everything the State just said to this Court about what type of evidence could possibly satisfy Washington, the State said, the threshold issue is reliability. That is a third-stage argument. Everything the State has said about how to analyze these types of evidence, who to trust, what to believe, these are all third-stage arguments. And that's fine. The PC Act is going to work as intended even if people like Mr. Reid say, look, I was innocent and I now have newly discovered evidence. One final point I'd like to point out is that Mr. Reid filed a successive petition. He also had filed an initial petition. The only claim that was properly before the Court and the proceedings below was the innocence claim. And under Washington, we know that finality is important. We know that innocence is the most important of all. So Mr. Reid asked that this Court, you know, observe that what was true decades ago remains true today. It shocks the conscience to continue to punish somebody who has compelling evidence of their actual innocence. Thank you. Thank you, Mr. Munchies. Case number 124940, People v. State of Illinois v. Jamario D. Reid, known as Agenda Number 2, will be taken under advisement. Thank you, Mr. Munchies and Ms. O'Connell for your arguments.